UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ROBERT HICKS,

                Plaintiff,

v.

VILLAGE OF OSSINING, VILLAGE OF
OSSINING POLICE DEPARTMENT, AARON
ZIMMERMAN, OSSINING POLICE OFFICER
#20896, ANDREW J. MAIORANA, OSSINING
POLICE OFFICER #5949, MARVISE
RENNALLS, OSSINING POLICE OFFICER
#R1477, and WILLIAM J. GALLAGHER,
OSSINING POLICE OFFICER #G1055,

                Defendants.
-----------------------------------------------------------------x

**OPINION AND ORDER**

12 CV 6874 (VB)

Briccetti, J.:

      Plaintiff Robert Hicks brings this Section 1983 civil rights action, alleging an excessive force claim under the Fourth Amendment.[1] Pending before the Court is defendants' motion for summary judgment. (Doc. #67).

      For the following reasons, the motion is GRANTED as to defendant Marvise Rennalls and DENIED as to the remaining defendants.

      The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

      The parties have submitted briefs, statements of facts, declarations with supporting exhibits, and video evidence, which reflect the following factual background.

---

[1] On March 3, 2015, the parties stipulated to a dismissal of all of plaintiff's other claims. (Doc. #66).

1

On December 10, 2011, a woman filed a complaint stating plaintiff held her against her will, straddled her on her bed, and forcibly touched her. At approximately 6:20 p.m. on December 12, 2011, plaintiff was standing on the sidewalk outside the Ossining Village Court, adjacent to the Ossining Police Department.[2] Officers Zimmerman, Maiorana, and Gallagher approached plaintiff to arrest him on the woman's complaint.

Video surveillance footage shows the arrest occurred in the following manner.[3]

The officers directed plaintiff to enter the police station. Plaintiff walked with a cane towards the entrance of the police station and stopped in front of the door. (Ex. L, Clip #4, at 18:24:20). A fourth officer stepped outside and joined Officers Zimmerman, Maiorana, and Gallagher.[4] (Id. at 18:24:27). Officer Zimmerman touched plaintiff's shoulder with one hand. (Id. at 18:24:43). Officer Zimmerman's hand remained on plaintiff's shoulder for approximately seven seconds, at which point plaintiff took a step towards his left, away from Officer Zimmerman. Plaintiff then turned to his left, away from the police station door and towards the street. (Id. at 18:24:56). About one second later, Officer Zimmerman used both hands to take

---

[2] Plaintiff was on his way to court in connection with an unrelated assault charge for which he had been released on his own recognizance. (Pl.'s Deposition, at 18).

[3] Defendants submitted ten video clips from security cameras in and around the police station. (Ex. L to the Affirmation of Paul E. Svensson, hereinafter "Ex. L"). In their filings, the parties refer to the video clips by number in the order in which they appear in the file. The Court adopts the same numerical order to refer to these video clips. Only the videos from inside the booking room of the Ossining Police Department have audio.

[4] Neither plaintiff nor defendants definitively identify the fourth officer assisting in the arrest. Officer Gallagher believed it was Sergeant Burn (Gallagher Dep. at 10), while Officer Rennalls believed it was Officer Zoocardi (Rennalls Dep. at 20). In any event, the fourth officer was not named as a defendant. During the arrest, Officer Rennalls held the door to the police station open, talked to plaintiff's girlfriend, and did not come into contact with plaintiff. (Rennalls Dep. at 18).

plaintiff's shoulder and pull him towards the door. Plaintiff took two steps towards the door. Then, the other three officers stepped closer to plaintiff, while plaintiff bent his right knee and began lowering himself towards the ground. (Id. at 18:25:01).

All four officers held plaintiff up by his shoulders for approximately four seconds, at which point plaintiff stretched out his legs in front of him, and the officers lowered plaintiff onto the ground. (Ex. L, Clip #4, at 18:25:05). Plaintiff was sitting on the ground with his legs extended when Officer Zimmerman took plaintiff's cane. (Id. at 18:25:09). Plaintiff then laid back onto the ground. (Id. at 18:25:11).

A few seconds later, Officer Zimmerman bent over plaintiff, and plaintiff sat up at about a forty-five degree angle. (Ex. L, Clip #4, at 18:25:17). Plaintiff laid back down with his legs lifted slightly off the ground as Officer Zimmerman remained bent over plaintiff. (Id. at 18:25:17-18:25:21). Then, two officers bent down besides plaintiff's head and left side[5] while Officer Zimmerman put his right knee on or near the right side of plaintiff's torso. (Id. at 18:25:24). Officer Zimmerman's knee did not move for approximately twelve seconds, at which point the two other officers rolled plaintiff onto his left side, then onto his stomach. (Id. at 18:25:36). While the officers rolled plaintiff onto his left side, Officer Zimmerman brandished his taser and held it in his right hand for the remainder of the arrest. (Id. at 18:25:44).

Plaintiff lay face down on the sidewalk, with his feet outstretched toward the doorway of the police station. The two officers who had been bent over by plaintiff's head and left side moved his arms around his back to handcuff him. Between 18:25:56 and 18:26:31, during the

---

[5] Neither plaintiff nor defendants definitively identify whether the officers near plaintiff's head and left side were Officer Maiorana, Officer Gallagher, or the unidentified fourth officer. Along with Officer Zimmerman, these two officers assisted in handcuffing plaintiff.

3

duration of the handcuffing, one officer's right knee was on or near the plaintiff's back.

Finally, two officers lifted plaintiff by his underarms, turned him towards the entrance of the police station, and began carrying him inside. (Ex. L, Clip #4, at 18:26:40). Plaintiff's legs were dragging on the ground, and Officer Zimmerman picked them up, such that plaintiff was being carried by three officers, approximately parallel to the ground, face down.

Once inside the police station booking room, the officers laid plaintiff face down on the floor. (Ex. L, Clip #6, at 18:25:42).[6] Plaintiff cried for an ambulance or medical assistance as officers took off his handcuffs. (Id. at 18:26:14). Plaintiff remained prone with his arms resting next to his sides. The officers instructed plaintiff to stand up and he replied that he could not. (Id. at 18:27:36). The officers searched plaintiff, during which time plaintiff cried out repeatedly, "my ankle." (Id. at 18:27:42-18:28:08). After the search, the officers instructed plaintiff to roll over, and he replied that he could not. (Id. at 18:28:13). One officer put his hands on plaintiff's shoulders while another pulled plaintiff's waist to roll plaintiff onto his back. (Id. at 18:28:20). After the maneuver, plaintiff repeatedly cried out "ow" and "I want an ambulance," to which the officers replied, "you are going to get one." (Id. at 18:28:30-18:28:40). The officers continued searching plaintiff. (Id. at 18:28:36). For approximately two minutes, the officers talked to plaintiff while he lay supine with his limbs outstretched.

The officers removed plaintiff's jacket by first removing the left sleeve, then the right sleeve, then by pulling the jacket out from under plaintiff's back. (Ex. L, Clip #7, at 18:31:27-

---

[6] The Court notes the time stamp on the security cameras are incongruous because the time on the booking room security camera when plaintiff enters is approximately one minute before the time on the outside security camera when plaintiff leaves the sidewalk. Neither party has called into question the accuracy of the security camera video; for clarity, the Court will cite to the time reflected on each video clip.

18:32:12).  During this forty-second time frame, plaintiff cried out that the officers hurt his finger, his right hand, his right wrist, his head, his neck, and his back.  Plaintiff told the officers he had previously injured his ankle and wrist, and had been given casts.  (Id. at 18:32:32).  When the officers asked him why he was not wearing casts, he said, "because I'm walking with a cane."  (Id. at 18:32:38).[7]

Plaintiff remained lying down, talking to the officers for approximately twelve minutes.  The officers spoke to plaintiff about the complaint alleging forcible touching, and discussed whether plaintiff wanted to go to the hospital.  Plaintiff told the officers he was taking Vicodin for back pain. (Ex. L, Clip #7, at 18:43:04).  He also told Officer Zimmerman he was not trying to be aggressive during the arrest outside the police station.  (Id. at 18:50:55).

Eventually, plaintiff asked for help to sit up.  Two officers lifted plaintiff's torso up by his upper arms, and leaned him against a wall with his legs outstretched in front of him.  (Ex. L, Clip #7, at 18:51:30).  Plaintiff continued conversing with the officers in that position for approximately seven minutes, at which point two officers lifted plaintiff by his underarms and seated him into a wheelchair.  (Id. at 18:57:05).

After plaintiff was arraigned on the unrelated assault charge, an ambulance took him to the hospital where he alleges an MRI and x-rays revealed tendon damage to his right wrist and a right ankle fracture.  He also alleges he suffered "hip, back, and neck pain." (Third Amended Compl. at ¶ 39).

---

[7]   In his deposition, plaintiff denied having any prior injuries.  (Pl.'s Dep. at 31) ("Q. Did you have any injuries at all prior to the interaction with the police that night? A. None.").

**DISCUSSION**

I.   <u>Legal Standard</u>

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  <u>See id</u>.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."  <u>Wilson v. Nw. Mut. Ins. Co.</u>, 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323.  If the non-moving party submits evidence which is "merely colorable," summary judgment may be granted.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  <u>Brown v. Eli Lilly & Co.</u>, 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted).  The mere existence of a scintilla of evidence in support of

the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court resolves all ambiguities and draws all permissible factual inferences in favor of the non-moving party.  Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011).  If there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

While "it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage," Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), the Supreme Court has instructed that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Therefore, district courts may make credibility assessments at the summary judgment stage "where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, [because] it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account."  Jeffreys v. City of New York, 426 F.3d at 554 (internal citation omitted).

II.     Excessive Force Claim

Defendants contend they are entitled to summary judgment on plaintiff's excessive force claim, arguing the only piece of evidence in the record that supports plaintiff's allegations of excessive force is plaintiff's own contradictory and incomplete testimony.

The Court disagrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399). Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96. This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. at 396.

Because police officers often must use some degree of force when arresting or otherwise lawfully "seizing" an individual, the Supreme Court has recognized that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. at 396 (internal citation omitted). Thus, a plaintiff generally must prove he sustained some injury to prevail on an excessive force claim. McAllister v. N.Y.C. Police Dep't, 49 F. Supp. 2d 688, 699 (S.D.N.Y. 1999); see Landy v.

Irizarry, 884 F. Supp. 788, 799 n. 14 (S.D.N.Y. 1995) ("An arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

It is typically the jury's "unique task . . . to determine the amount of force used, the injuries suffered and the objective reasonableness of the officer's conduct." Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999). Defendants nevertheless contend this case is one of the rare circumstances when "the plaintiff's testimony is so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint." (Defs.' Br. at 7).

Although plaintiff did make several statements that were either self-contradictory or were controverted by the video evidence,[8] this is not a case in which "no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint." Jeffreys v. City of New York, 426 F.3d at 555 (quoting Schmidt v. Tremmel, 1995 WL 6250, at *3 (S.D.N.Y. Jan. 6, 1995)). Here, a reasonable juror could credit plaintiff's statements that are consistent with the video evidence – and those statements may be enough to sustain an excessive force claim.

---

[8] For example, to the extent plaintiff contends defendants were "shoving, pushing, kicking" him on the sidewalk, (Pl.'s Opp. at 5), or that defendants "banged [plaintiff's] head against the door" in the booking room, (Pl.'s Rule 56.1 Counterstatement, ¶ 15), the Court does not credit those assertions, as they are flatly contradicted by the video evidence. See McKinney v. Dzurenda, 555 F. App'x 110, 111-12 (2d Cir. 2014) (summary order) ("[V]iewing the video footage together with the other evidence, no reasonable fact-finder could conclude that the defendants used force against [plaintiff] maliciously or sadistically to cause harm"); Kalfus v. N.Y. & Presbyterian Hosp., 476 F. App'x 877 (2d Cir. 2012) (summary order) (affirming dismissal of plaintiff's excessive force claim where video "recordings demonstrate[d] that [plaintiff] resisted arrest by refusing to stand up or to permit himself to be handcuffed," and "to effect the arrest, officers turned [plaintiff] onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waste").

First, plaintiff asserts he was not resisting arrest, and defendants assert he was. Based on the video footage, it is impossible to know what was said before and during the altercation on the sidewalk, such as whether plaintiff refused to comply with Officer Zimmerman's, Officer Maiorana's, or Officer Gallagher's orders. Moreover, the video evidence does not unequivocally show plaintiff was resisting. Therefore, a reasonable juror could credit plaintiff's account that he obeyed the officers' instructions in a nonresistant manner.

Second, plaintiff states he was kneed in the back. Defendants argue "the video does not show the police striking the plaintiff at all." (Defs. Rule 56.1 Statement, ¶ 10). But the video evidence is ambiguous as to how much force, if any, the officers used with their knees on plaintiff. A reasonable juror could credit plaintiff's account that he was kneed in the back with enough force to cause injuries.

Third, plaintiff states defendants' contact with his back caused him back injuries. Plaintiff also contends the handcuffs were applied too tightly, causing tendon damage. Defendants assert plaintiff had prior injuries to his wrist, ankle, and back. A reasonable juror could credit plaintiff's account that his injuries were caused by defendants, or that the force applied by the officers' knees or the handcuffs exacerbated preexisting injuries.

Based on this evidence, a jury could infer that plaintiff – compliant when instructed to walk towards the police station and then prone on the ground – (i) did not pose a threat to the safety of the officers, (ii) was not resisting arrest, (iii) had knees pressed into his back with excessive force, (iv) had handcuffs applied too tightly, and (v) was injured as a result. That permissible inference cannot properly be rejected as a matter of law.[9]

---

[9] However, the Court will grant summary judgment as to Officer Marvise Rennalls. Plaintiff does not dispute Officer Rennalls's account, supported by video evidence, that she was

Defendants cite several excessive force cases in which the court held plaintiff's testimony was not credible as a matter of law, and urge the Court to do so here. But the excessive force claim in each of these cases was undermined by other evidence, such that a rational juror could not credit the allegations. See, e.g., McKinney v. Dzurenda, 555 F. App'x at 111-12 (summary order) (concluding defendants "used necessary force in a good faith effort to maintain order and security and re-gain control over" plaintiff when video evidence showed plaintiff "assumed a boxing stance and made clear his willingness to fight"); Kalfus v. N.Y. & Presbyterian Hosp., 476 F. App'x at 880-81 (summary order) ("[R]ecordings demonstrate that [plaintiff] resisted arrest by refusing to stand up or to permit himself to be handcuffed, and that the patrolmen used only reasonable force to overcome [plaintiff's] resistance."); Jeffreys v. City of New York, 426 F.3d at 554 (holding plaintiff's testimony was "largely unsubstantiated by any other direct evidence" and "so replete with inconsistencies and improbabilities that no reasonable juror would . . . credit the allegations made in the complaint").

Of course, the jury is not compelled to find plaintiff did not resist, or that the amount of force used by defendants actually injured plaintiff. These are issues that remain in dispute. But if plaintiff did not resist, and if defendants kneed plaintiff's back or applied the handcuffs too tightly, causing injuries, a reasonable jury could find the force used was excessive.[10] At this

---

not directly involved in the arrest and had no contact with plaintiff. (Rennalls Dep. at 22, 24). Although plaintiff brought a failure to intervene claim that may have applied to bystander officers such as Officer Rennalls, the parties subsequently stipulated that plaintiff's only claim is for excessive force. (Doc. #66).

[10] Officers' acts that are less punishing than kneeing the back of a prone and compliant arrestee have supported a Fourth Amendment claim of use of excessive force. See, e.g., Maxwell v. City of New York, 380 F.3d 106, 109 (2d Cir.) (reversing summary judgment dismissal of an excessive force claim when an officer shoved plaintiff into the back of a police car and plaintiff's head struck a hard surface of the car, causing pain in her arm and lower back);

stage, the Court will not make credibility determinations resolving the material factual issues of whether plaintiff resisted arrest and whether Officers Zimmerman, Maiorana, or Gallagher caused plaintiff injuries.

In sum, although this is a close call, viewing the record in the light most favorable to plaintiff, there are material issues of fact as to whether Officers Zimmerman's, Maiorana's, or Gallagher's use of force was reasonable under the circumstances, and whether the officers caused any or all of plaintiff's injuries. Therefore, defendants' motion for summary judgment on plaintiff's excessive force claim is denied as to Officers Zimmerman, Maiorana, or Gallagher.

## CONCLUSION

Defendants' motion for summary judgment (Doc. #67) is GRANTED as to Officer Rennalls and DENIED as Officers Zimmerman, Maiorana, and Gallagher.

Counsel are directed to submit a Joint Pretrial Order in accordance with the Court's Individual Practices by February 26, 2016, and to appear for a pretrial conference on March 10, 2016, at 9:30 a.m.

Dated: January 27, 2016
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

Robison v. Via, 821 F.2d 913, 924-25 (2d Cir.1987) (permitting an excessive force claim to survive summary judgment on allegations that a police officer twisted an arrestee's arm and threw her against a car, causing bruising). Additionally, "[s]everal decisions have recognized that excessively tight handcuffing that causes injury can constitute excessive force." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (collecting cases).